The case for argument today is Lewis v. Village of Alsip. Mr. Weinberg. May it please the court, this case concerns a $50 parking ticket and whether a municipality can issue a parking ticket without providing street signage on the street that there is no parking in that particular zone, but only providing notice. The case for argument today is Lewis v. Village of Alsip. Mr. Weinberg. This case concerns a $50 parking ticket and whether a city can issue a parking ticket for parking in a no parking zone without issuing any street signage that there is no parking in the area, but only issuing notice via their website. The district court erred in dismissing this case for two reasons. First, the district court erred because it said that the plaintiff received all the process that she was due when she got a hearing to contest the ticket. Second, the district court erred because it said that the plaintiff received all the process that she was due when she got a hearing to contest the ticket. Second, the district court erred because it said that the plaintiff received all the process that she was due when she got a hearing to contest the ticket. And third, the district court erred because it said that the plaintiff received all the process that she was due when she got a hearing to contest the ticket. And I think that's a problem. And I think that's a problem. And I think that's a problem. But people have to learn the rules. Are they all unconstitutional? No, I don't think they're all unconstitutional. I think this one's different because it's a temporary parking regulation that changes depending on the weather. I think this one's different because it's a temporary parking regulation that changes depending on the weather. The parking consequences vary by the weather, but they're all secondary. Actually, the structure, as I recall, A defines the primary routes and says they're going to be posted, and B says everything that's not primary is secondary. And then you have to know that when it snows, which it actually hasn't been doing much of this year, but normally in the upper Midwest, that's something that happens, you can't leave your car there. And so the district court actually had a couple of approaches. I think one of them was the fundamental approach that Judge Easterbrook is talking about. Another one, though, is the judge looking at Lambert, which he pointed out has never been applied again to the Supreme Court or by the Supreme Court or anybody, as Justice Frankfurter predicted. In his dissent, it probably would not be. And the judge actually says, and actually, if what we're really worried about is whether people ought to be at least in general in a position to conform their conduct to the law, this is the upper Midwest. People should expect that there are some restrictions on parking, so this really can't be a bolt from the blue. But, you know, that said, it's not that this is even a no-notice situation. Anybody who was all that curious about it could just go to the village's website and check it out. My response to that is that that's just not how the practical realities, but parking regulations are given via street signage. That's the historical long-term practice. Well, counsel, I've just given you some examples that are not. No parking within 15 feet of an intersection. No parking within 10 feet of a fire hydrant. Right? People just have to know those rules. They are not separately posted. If you had to post every parking regulation, there wouldn't be room for anything on the side of streets. No, but the examples that you're giving… In what case do you principally rely on for the proposition that state or local rules about traffic must be posted on street side? There is no on-point case about parking regulations must be posted. There actually are on-point decisions. They're adverse to you. One is Sauk-Stellas against the city of Chicago. There's another one which wasn't about street side parking regulations, but about the running of the Illinois Tollway. That's the Cochran against Illinois case. That's adverse to you. They both expressly reject the position you're now taking. I just wondered if there were any decisions in your favor. I think the principles of these cases are in our favor. Certainly, the principles enunciated in Lambert, but also in Texaco v. Short, I think, as well at the Supreme Court. I think if you apply the principles here, though the Fair Notice Doctrine is rarely used, it applies in this particular context regarding parking regulations. The historical practice is that people can expect to be able to park on a city street when there is no signage that indicates otherwise. It would be a shock. Then you have to answer my question about no parking within 15 feet of an intersection by saying that that ordinance is unconstitutional, because since there's no sign near the intersection, people expect they can park. But you answered my question about that by saying that was valid, and I'm trying to figure out what's going on here. I think that the difference between that regulation is that it's universal, fixed, and stable. It applies at all times. The regulation here demands that you have to know it changes depending on the weather. The presumption is that you can park there. Then you should be arguing that the thing that has to be posted is how many inches of snow have fallen, not whether the route is primary or secondary. If the thing that changes is the weather, why aren't you arguing that the city has to go around during a snowfall and tack up notices saying, we've just passed one inch or we've just passed three inches? Well, I think that a notice saying that you can't park there if there's more than three inches of snow on the ground would be appropriate notice. But saying without a sign that says you can't park there under certain circumstances, I think the legitimate presumption for people is that they can park there. That's how parking regulations work. And it makes sense because most laws, including fire hydrant laws, parking near fire hydrants, are fixed and stable. They don't change depending from day to day. So that's the first reason the district court erred is because fair notice doctrine is a component of due process and he didn't address that. I'm having trouble actually. I need to back up to one point. This does not happen to be a case where the municipality just had a secret policy. First of all, there was probably at some point, you know, whatever the city council and also is a meeting at which it enacts this ordinance. Secondly, it's probably published and available at the city hall. Thirdly, it's on the website. And in today's world, a great number of entities, including municipalities, rely on web publication. And you seem to think that only a street sign would do. And I'm wondering, well, why is that true? You know, suppose anytime somebody buys a house or rents a property and also they get some package of, you know, welcome to also disclosures. And one of the things in the package is snow rules. You know, don't park anywhere in the city when it snowed more than three inches or words to that effect. I mean, surely that would be enough. I mean, even if people don't read those things, but that's that's a decent effort of notice. Well, first of all, I think discovery will show whether or not they do issue that. This was a motion to dismiss, and we haven't had a chance to prove what kind of notice also gives. We only know that they don't give any street signage. So whether a packet of information is sufficient to notify homeowners, there is one thing. I don't know how that applies. That wouldn't apply to people who are visitors. Second of all, I think discovery would also show, and we know this from early exchange of discovery, that on this particular snow fall, 259 people were ticketed. I think that's a good indication of how ineffective this type of notice actually has been. And then one has to ask, well, why don't they put street signage on secondary snow routes when they put it on primary snow routes? Judge Easterbrook gave you the, I mean, you know, you would have a forest of signs. You know, every block would have two or three signs saying what was going on for that block. And maybe the city thinks just an across-the-board rule, if there's a certain amount of snow, you need to get the plows through. You know, we don't want the plows plowing around cars and creating great mountains of snow. This was a pretty significant snow that your client was involved with, as I recall. It was 6 to 10 inches, so that's a lot. I guess my response would be if they were really interested in protecting against, you know, public safety and street clearance, they would post the signage. What's going on now is that they're sort of tricking people into thinking that you can park there, including visitors, of course, who would have no way of knowing the city policy other than with street signage. I see that my time is up, and I'd like to reserve the balance for rebuttal. Certainly, counsel. Ms. Sartori. Good morning, Your Honors. May it please the Court, Elizabeth Atterd on behalf of the Village of Elsip. The claim in this matter is simply not a due process claim. Procedural due process requires that an individual receive notice of a pending property interest deprivation and an opportunity to be heard to contest the deprivation. Due process guarantees that prior to property deprivation, an individual be provided an opportunity to be heard in a meaningful time and in a meaningful manner. The notice required under procedural due process usually refers to notice of the pre-deprivation hearing, not notice of the existence of a law itself. There is no allegation here that the plaintiff received inadequate notice of a pre-deprivation hearing, nor is there a claim that she was denied a hearing to contest the deprivation or that the hearing itself was in any way inadequate. Instead, this case involves a claim that failure of the government to notify individuals of the existence of the law itself in the manner in which the individuals would prefer to receive the notice is enough to state a due process claim. This is essentially an ignorance of the law claim, despite the well-established rule that ignorance of the law will not excuse. In her briefs on this matter, plaintiff frequently refers to all the fair notice cases, but she is conflating the traditional due process requirement of adequate notice of a pre-deprivation hearing with her claim that notice is required of the existence of the law itself. In fact, Lambert v. California is the only case that plaintiff actually cites which found the ignorance of the law alone is sufficient to state a due process claim. Lambert was decided by the Supreme Court in 1957, and since that time, this court, the Supreme Court, and other circuit and district courts have repeatedly refused to extend its holding, keeping to the standard rule that ignorance of the law is not an excuse, and thereby fulfilling the prediction in Justice Frankfurter's dissent that Lambert would be an isolated deviation from the strong current of precedence. Plaintiff cites a number of Supreme Court cases in her briefs that discuss the adequacy of notice. However, as I previously mentioned, most of the cases deal with the sufficiency of notice of a pre-deprivation hearing, and none of the cases she cites, other than Lambert, involve a due process challenge that citizens are entitled to reasonably calculated notice of the existence of the law itself. As I'm sure this court is aware, Lambert involved a challenge to a Los Angeles ordinance which required that any person who had been convicted of a felony and resided in the city or was present in the city for five or more days to register with the police department. Lambert was convicted under the ordinance, and she appealed, arguing that the ordinance violated her due process rights because she did not know of its existence. The Supreme Court agreed with Lambert and found that her due process rights had been violated because she did not receive notice of the ordinance. But to be clear, the court noted that ignorance of the law not being a defense is a general rule, and that this was an exception to that rule. And specifically, the court found that this was an exception because the ordinance regulated wholly passive conduct and because there was no probability that a person charged under the ordinance would be aware of its existence. So much cannot be said here. First, as to the passive conduct prong, Lambert involved a criminal penalty for mere presence in the city. Here, we are talking about actual conduct, parking a vehicle on a public street, driving a vehicle and choosing where to park that vehicle. This cannot be fairly described as passive conduct, similar to that in Lambert, which involved just being present in the city. The actual violation is failing to move the vehicle once it snows. Why can't you characterize that as passive? That's a good point, Your Honor. I would say, though, that the while I agree to a certain extent, I don't think anything in the Constitution turns on which word we apply. But if you're going to make an active passive argument, this sounds like it's passive. The car is just sitting there. Judge, I would argue that for a car to be parked in a public street, a person has to choose to park it there in the first place. And it is a point well taken. You park it there before the snow when it's perfectly legal to park it there. And then it snows three inches or six or ten. And you don't move it. Look, as I say, I don't see anything in the Constitution that talks about active versus passive. But you don't want to make an argument that puts you on the wrong side of the line. You are yourself drawing. Do you think there's anything at all – I mean, it's not argued in this case that there was anything wrong with the promulgation of this rule. But I'm just thinking of things that happen in some other countries, not our country, where there are secret regulations. They're sometimes called drawer regulations. Somebody quietly and with no notice creates some rule and then goes around arresting people for violating that rule. So there must be some cognizable interest in having a duly enacted law. Well, yes, Judge. The Open Meetings Act would require this to be – this law to have been adopted at an open meeting. To be honest, this – as far as I know, this parking regulation is older than I am. So I do not know when it – I do not know the circumstances. I was not there when it was adopted, but it has been around for a very long time, at least since the 70s, I think. But, yes, there is no indication here that this was not adopted in accordance with the requirements of the Open Meeting Act. And, again, as this court noted in the appellant's arguments, the village does post this on its website. So it is not actively trying to conceal the existence of this ordinance. It's just not posting signs all over the village indicating that everywhere that's not a primary route is a secondary route. What are people supposed to do in the village of Allsup when there's a snow in excess of three inches? Do they all have to just drive their car over to O'Hare and park in the covered garage or something? I mean, because particularly people of lesser means may not have a private garage or an off-street parking lot or the like. I have visions of people in Allsup just driving around the block for 24 hours while they wait for the period to elapse from the snowfall. Your Honor, when I originally was assigned to this case, that thought passed my mind. I live in the city of Chicago where parking – where a lot of people don't have the luxury of parking in a garage. This is a smaller village where most people do have private parking spaces. That being said, there are other municipalities surrounding Allsup that have rules about no overnight parking because they want to do street cleaning. While it may be an inconvenience to people, they need to plan ahead and figure out what they're going to do during heavy snowfalls in terms of parking their vehicle if they do not have a garage. Are there any municipal garages in Allsup? Not that I'm aware of. Does the city send out a team of people with flamethrowers to reduce the snow density? Probably not. Judge, I'm not quite sure I understand the question there. The law applies only when there's more than three inches of snow. If you reduce the amount of snow by increasing the heat, you would reduce the number of vehicles subject to this ordinance. I just wondered if the village tries to do that. Not to my knowledge, Your Honor. That's certainly something that we could raise with them, but I am not aware of them doing anything to reduce – You can suggest that be put on an agenda at a future village council meeting. My sense from Mr. Weinberg is that the problem is on the other side, that there's this little-known ordinance that is a cash cow for the village because all sorts of people don't know. And all of a sudden, the $50 payments start rolling in every time there's a snow. Your Honor, I know that Mr. Weinberg's argument is that this has to do with fundamental fairness. My response to that is that not every injury is going to rise to the level of a constitutional injury. Maybe it would be better for them to be posting signage. Is that a due process violation? I hope you're not suggesting that this was wrongly pleaded, that it should instead have been characterized as the right-to-park corollary to the constitutional right to travel. That's a very interesting argument to embrace. It wasn't raised.  It has been waived. It has been waived. We focused, obviously, on the due process aspect of that, and we would argue that there is no due process violation here. Thank you, Ms. Atchard. Anything further, Mr. Weinberg? Yeah, I have a couple things. One is I think that there are serious consequences if the court upholds this law, and that is that basically it will allow municipalities to issue parking tickets to any and all drivers without posting street signage. And I think that will come as a shock to most drivers who expect that if there's no sign on the street that they can park, they can park there. And I think it will have dramatic implications. Secondly, you know, this idea that there's no case on point, you know, precedent's not the only way to, you know, decide a decision. Principles, and the principles here are that notice has to be reasonably calculated to give people the information so that they can avoid violating the law. And that just doesn't occur here without street signage. Maybe someday. I mean, there's not even a sign to say— Then, counsel, are you contending that the entire United States Code is unconstitutional? Because I do not think that Title 26, to take the Internal Revenue Code, is reasonably calculated to give anybody notice of anything. It's impenetrable jargon, and therefore, on your view, is unconstitutional root and branch. I don't think that's the law. No, I don't think that every regulation is—there's a legal fiction as that we know the law as a general matter. But in certain circumstances, and I think parking is one of them, that legal fiction is extended too far. And that's because it's an expectation of every driver that if there's no sign on the street, you can park in a legal parking spot. And so parking just seems to me an area where the legal fiction doesn't apply that we know the law. And, of course, that legal fiction applies because it's impractical to give people notice of every law, including the Internal Revenue Code. But what is practical, we know, is putting signage on the street. Why do we know it? Because every municipality does it. Why do we know it? Because even ALSEP does it for primary parking streets, primary streets. And so I think that this law, even though it involves just a $50 parking ticket, has very real significance for how municipalities operate. Thank you, Your Honor. Thank you, Mr. Weinberg. The case is taken under advisement.